**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

MPIANA PRINCE KABAMBA,

Petitioner,

vs.

JOHN MATTOS, *et al.*,

Respondents.

Case No.: 2:26-cv-01181-GMN-MDC

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Pending before the Court is Petitioner Mpiana Prince Kabamba's First Amended Petition for Writ of Habeas Corpus, (ECF No. 10). Federal Respondents Ruben Leyva, Todd Lyons, Markwayne Mullin, and Todd Blanche[1] filed a Response, (ECF No. 14), to which Petitioner filed a Reply, (ECF No. 16).[2] Also pending before the Court is Petitioner's Motion for Temporary Restraining Order, (ECF No. 17). Federal Respondents[3] filed a Response, (ECF No. 18), to which Petitioner filed a Reply, (ECF No. 20).

For the reasons discussed below, the Court GRANTS the First Amended Petition and orders Petitioner's immediate release.

## I. <u>BACKGROUND</u>

Petitioner Mpiana Prince Kabamba was born in the Democratic Republic of Congo ("DRC"). (First Am. Pet. 3:15–17, ECF No. 10). He was admitted to the United States on an F-1 student visa on May 6, 2022. (Fed. Resp. 1:18–19, ECF No. 14); (*see also* Not. Appear at 2,

[1] Petitioner's original Petition, (ECF No. 4), named then-Attorney General Pamela Bondi and the Department of Homeland Security as respondents. Both were terminated, and Respondents Leyva, Lyons, Mullin, and Blanche were added, when Petitioner filed the First Amended Petition, (ECF No. 10).

[2] Respondent John Mattos, Warden of the Nevada Southern Detention Center, filed a Response to Petitioner's First Amended Petition for Writ of Habeas Corpus, asserting that he has no independent authority to release Petitioner and takes no position on the Petition's merits. (*See generally* Mattos Resp., ECF No. 15).

[3] As with Petitioner's First Amended Petition, Respondent Mattos filed a Response taking no position on the merits of the Motion for Temporary Restraining Order. (*See generally* Mattos Resp., ECF No. 19).

Ex. A to Fed. Resp., ECF No. 14). On November 26, 2024, his status was terminated for failure to enroll in classes, but Petitioner remained in the United States. (Fed. Resp. 1:19–21); (*see also* Not. Appear at 2, Ex. A to Fed. Resp.). Petitioner was convicted of driving under the influence ("DUI") on April 25, 2023, and he was arrested and charged with a second DUI on September 6, 2025. (Fed. Resp. 1:22–23); (*see also* I-213 at 3, Ex. B to Fed. Resp., ECF No. 14).

Petitioner was detained by Immigration and Customs Enforcement ("ICE") on or around September 29, 2025. (Fed. Resp. 1:25); (*see also* I-213 at 3–4, Ex. B. to Fed. Resp.). On November 18, 2025, an Immigration Judge ("IJ") ordered him removed to the DRC. (Fed. Resp. 1:26–2:2); (*see also* IJ Order at 4, Ex. C to Fed. Resp., ECF No. 14). Petitioner appealed the removal order, but the Board of Immigration Appeals ("BIA") denied his appeal on January 29, 2026. (Fed. Resp. 2:6–9); (*see also* BIA Dec. at 3, Ex. D to Fed. Resp., ECF No. 14). Consequently, Petitioner has been detained by ICE for almost 13 months, including nine months since his removal order became final.

## II. LEGAL STANDARD

### A. Habeas Petitions

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). A district court's habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

**B. Statutory Detention Scheme**

When the Government wants to remove an individual, the normal path is through removal proceedings, requiring an evidentiary hearing before an IJ. 8 U.S.C. § 1229a. Removal proceedings determine not only whether an individual may be removed from the United States but also to where they may be removed. In the first instance, the noncitizen is entitled to select a country of removal. *Id.*; 8 U.S.C. § 1231(b)(2)(A); 8 C.F.R. § 1240.10(f). If the noncitizen does not do so, the IJ will designate the country of removal and may also designate alternative countries. 8 C.F.R. § 1240.10(f).

## III. DISCUSSION

Petitioner alleges that he is entitled to habeas relief because (1) his detention violates his Fifth Amendment right to due process because his removal is not reasonably foreseeable as required by *Zadvydas v. Davis*, 533 U.S. 678 (2001); (2) his detention violates the Immigration and Nationality Act ("INA"); (3) ICE's current policy and procedures relating to third-country removals violate the Administrative Procedure Act ("APA") and Petitioner's Fifth Amendment due process rights; and (4) to the extent that his detention is meant to facilitate his removal to a third country, it violates his Fifth Amendment due process rights. (*See generally* First Am. Pet.). The Court begins by addressing Petitioner's arguments under the Fifth Amendment.

**A. Petitioner's Detention Violates the Fifth Amendment**

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. The Supreme Court has held that "the Due Process Clause protects [a noncitizen] subject to a final order of deportation." *Zadvydas*, 533 U.S. at 693–94. In *Zadvydas*, the Supreme Court held that the INA does not authorize "indefinite, perhaps permanent, detention" of noncitizens subject to final orders of removal. *Id.* at 699.

The authority of ICE to detain noncitizens under federal law derives from 8 U.S.C § 1231, which directs the Attorney General of the United States to affect the removal of any noncitizen from this country within 90 days of a final order of removal. § 1231(a)(1). The removal period begins on the latest of three dates: (1) the date the order of removal becomes "administratively final," (2) the date of the final order of any court that entered a stay of removal, or (3) the date on which the [noncitizen] is released from non-immigration detention or confinement. § 1231(a)(1)(B). During the removal period, detention is mandatory. § 1231(a)(2). Under § 1231, the removal period may be extended beyond 90 days for a variety of reasons including a determination by the Department of Homeland Security ("DHS") that "removal is not practicable or proper." *Id.*

Because "[a] statute permitting indefinite detention . . . would raise a serious constitutional problem," the Supreme Court has "read an implicit limitation" into the statute and has held that a noncitizen may only be detained for "a period reasonably necessary" to effectuate their removal. *Zadvydas*, 533 U.S. at 682. When a removable noncitizen is detained beyond this reasonable time and "removal is not reasonably foreseeable, the court should hold continued detention unreasonable." *Id.* at 699. The Supreme Court adopted a six-month period of presumptive reasonableness after the removal order is final and confirmed that "[a noncitizen] may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 710. The Court further determined that "after this 6–month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 701. If the Government fails to meet its burden, then the noncitizen must be released from detention. *See Jennings v. Rodriguez*, 583 U.S. 281, 299 (2018).

Here, Petitioner's detention has surpassed the six-month period of presumptive reasonableness. Petitioner's removal order became final on January 29, 2026, when the BIA dismissed his appeal. (BIA Dec. at 3, Ex. D to Fed. Resp). Based on that date, the 90-day removal period under 8 U.S.C. § 1231 concluded on April 29, 2026. The six-month period of presumptive reasonableness under *Zadvydas* thus lapsed on July 29, 2026, six months after the removal order became final. Because the six-month period has passed, the Court must determine whether Petitioner provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future and if so, whether Respondents rebut that showing.

**1. Petitioner's Initial Burden**

Petitioner argues that his removal is not reasonably foreseeable under *Zadvydas*. He puts forth evidence to support an initial finding that there is no significant likelihood of removal in the reasonably foreseeable future. Specifically, Petitioner alleges that the government has made no meaningful attempt to deport him to the DRC or a third country. (First Am. Pet. 10:21–23); (Reply 3:15–18, ECF No. 16). Respondents have not provided any evidence that his removal is imminent, such as travel document requests, communications from the DRC indicating that it will accept Petitioner, or scheduled removal flights. (Reply 2:19–25). Respondents' unwillingness or inability to effectuate removal in the nine months since Petitioner's removal order became final supports Petitioner's claim that removal is not significantly likely in the reasonably foreseeable future.

The Court also takes judicial notice[4] of the fact that, after Petitioner was ordered removed and around the time that Petitioner filed the First Amended Petition, the Ebola virus

[4] The Court may take judicial notice of government documents available from reliable sources, including government websites. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998–999 (9th Cir. 2010); Fed. R. Evid. 201 (allowing a court to take judicial notice of a fact not subject to reasonable dispute in that it is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned).

began to spread rapidly in the DRC. The World Health Organization declared a public health emergency in May 2026. *See Epidemic of Ebola Disease Caused by Bundibugyo Virus in the Democratic Republic of the Congo and Uganda Determined a Public Health Emergency of International Concern*, World Health Org. (May 17, 2026), https://www.who.int/news/item/17-05-2026-epidemic-of-ebola-disease-in-the-democratic-republic-of-the-congo-and-uganda-determined-a-public-health-emergency-of-international-concern. In July, the State Department issued a Level 4 Travel Advisory against travel to the DRC because of the Ebola outbreak. *See Travel Advisory: Democratic Republic of the Congo*, U.S. Dep't of State (July 15, 2026), https://travel.state.gov/en/international-travel/travel-advisories/democratic-republic-of-the-congo.html. In the months since, Ebola continued to spread in the country and "is now the second-largest Ebola outbreak on record," according to the Centers for Disease Control. *Ebola Outbreak: Current Situation*, Ctrs. for Disease Control (Oct. 20, 2026), https://www.cdc.gov/ebola/situation-summary/index.html. The ongoing Ebola crisis further supports Petitioner's claim that he is unlikely to be removed to the DRC in the reasonably foreseeable future.

**2. Respondents' Burden**

The burden thus shifts to Respondents to produce evidence sufficient to rebut Petitioner's showing. *See Zadvydas*, 533 U.S. at 701. Respondents state that removal is likely in the foreseeable future because "he will be processed for effectuation of that removal order shortly." (Fed. Resp. 3:9–11). Yet Respondents fail to supply the Court with any evidence of DHS's attempts thus far to remove Petitioner. Petitioner has been detained for almost nine months following a final order of removal, but Respondents submit no evidence that DHS has attempted to coordinate his removal to the DRC or a third country, or even that they have begun the process in that time. Indeed, Respondents acknowledge that they have not attempted to remove Petitioner to a third country. (Fed. Resp. 4:21–22).

Courts in this circuit have regularly refused to find respondents' burden met where respondents have offered little more than generalizations regarding the likelihood that removal will occur. *See, e.g.*, *Singh v. Gonzales*, 448 F. Supp. 2d 1214, 1220 (W.D. Wash. 2006); *Hoac v. Becerra*, No. 2:25-CV-01740-DC-JDP, 2025 WL 1993771, at *3 (E.D. Cal. July 16, 2025). Thus, Respondents' bare assertions that removal *could* possibly occur cannot satisfy their burden under *Zadvydas*. Accordingly, Respondents fail to rebut Petitioner's showing. Petitioner is entitled to habeas relief under the Fifth Amendment.

**B. Petitioner is Entitled to Due Process Before Removal to a Third Country**

Petitioner also challenges his potential removal to a third country without constitutionally adequate procedures. (First Am. Pet. 11:18–13:9). He argues that, to the extent his detention is meant to facilitate his removal to a third country, that detention is unlawful because ICE's procedure for third country removal would violate his due process rights. (*Id.* 13:1–9). Although Respondents claim "[t]here have been no attempts to remove Petitioner to a third country," (Fed. Resp. 4:21–22), Petitioner argues that because "ICE is evidently unable to remove him to [the DRC], . . . it is likely that ICE will at some point turn to the possibility of third country removal." (Reply 4:12–16).

The record before the Court indicates that Respondents have made no attempt to remove Petitioner to the DRC, and, as previously discussed, the State Department issued a Level 4 Travel Advisory against travel to the DRC because of an ongoing Ebola outbreak. (*See* Section (III)(A)(1)). The Court therefore finds that Petitioner's fear that ICE will seek to remove him to a third country is not speculative, and he has Article III standing to make this claim. *See, e.g.*, *Esmail v. Noem*, No. 2:25-cv-08325-WLH-RAO, 2025 WL 3030589, at *5 (C.D. Cal. Sept. 26, 2025) ("The Court is satisfied that, as a noncitizen with a removal order—who is, therefore, inherently subject to [DHS's policy of third country removal with minimal notice]—

Petitioner has sufficiently demonstrated 'that he is realistically threatened by a repetition of the violation' at issue.") (quoting *Melendres v. Arpaio*, 695 F.3d 990, 997 (9th Cir. 2012)).

"Immigration proceedings must provide the procedural due process protections guaranteed by the Fifth Amendment." *Vilchez v. Holder*, 682 F.3d 1195, 1199 (9th Cir. 2012) (citing *Lacsina Pangilinan v. Holder*, 568 F.3d 708, 709 (9th Cir. 2009)). A "noncitizen must be given sufficient notice of a country of deportation that, given his capacities and circumstances, he would have a reasonable opportunity to raise and pursue his claim for withholding of deportation." *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1009 (W.D. Wash. 2019) (citing *Mathews v. Eldridge*, 424 U.S. 319, 349 (1976)). "[I]ndividuals whose rights are being determined are entitled to notice of the issues to be adjudicated, so that they will have the opportunity to prepare and present relevant arguments and evidence." *Andriasian v. I.N.S.*, 180 F.3d 1033, 1041 (9th Cir. 1999). "In the context of country of removal designations, last minute orders of removal to a country may violate due process if an immigrant was not provided an opportunity to address his fear of persecution in that country." *Najjar v. Lynch*, 630 F. App'x 724, 724 (9th Cir. 2016) (mem.). Accordingly, the Court finds that Petitioner has a due process right to receive meaningful notice and opportunity to present a fear-based claim to an IJ before DHS deports him to a third country, if it attempts to do so.[5]

**C. Scope of Relief**

First, Petitioner requests that he be released immediately. (First Am. Pet. 14:12). The remedy for a *Zadvydas* claim is generally release of the habeas petitioner under conditions of supervision. *Zadvydas* explains that "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." 533 U.S. at 699–700. It further provides that the noncitizen's "release may and should be conditioned on any of

---

[5] Because the Court finds that Petitioner puts forth a successful due process argument under *Zadvydas*, it need not determine whether the third-country deportation policy violates the APA.

the various forms of supervised release that are appropriate in the circumstances, and the [noncitizen] may no doubt be returned to custody upon a violation of those conditions." *Id.* at 700. Moreover, when a court considers a due process claim, it may tailor relief to the specific problem that gives rise to the due process violation. *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

Because the Court holds that Petitioner's continued detention violates the Fifth Amendment based on the analytical framework provided in *Zadvydas*, the Court finds that Petitioner's immediate release, subject to reasonable terms of supervision provided under 8 U.S.C. § 1231(a)(3), is warranted.[6] *See Zadvydas*, 533 U.S. at 699–700.

Second, Petitioner requests that the Court prohibit Respondents from removing him to a third country without providing him and his counsel with adequate notice of intent to seek removal to a third country and due process in the form of an opportunity to seek to reopen Petitioner's immigration court proceedings to seek fear-based relief from removal. (First Am. Pet. 14:1–7). For the reasons discussed above, the Court grants this requested relief.

///

///

///

///

---

[6] 8 U.S.C. § 1231(a)(3) provides:

> If the [noncitizen] does not leave or is not removed within the removal period, the [noncitizen], pending removal, shall be subject to supervision under regulations prescribed by the Attorney General. The regulations shall include provisions requiring the [noncitizen]—
>
> (A) to appear before an immigration officer periodically for identification;
>
> (B) to submit, if necessary, to a medical and psychiatric examination at the expense of the United States Government;
>
> (C) to give information under oath about the [noncitizen's] nationality, circumstances, habits, associations, and activities, and other information the Attorney General considers appropriate; and
>
> (D) to obey reasonable written restrictions on the [noncitizen's] conduct or activities that the Attorney General prescribes for the [noncitizen].

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Petitioner's First Amended Petition, (ECF No. 10), is **GRANTED.**

**IT IS FURTHER ORDERED** that Petitioner's Motion for Temporary Restraining Order, (ECF No. 17), is **DENIED as moot.**

**IT IS FURTHER ORDERED** that Petitioner must be released from detention no later than **October 23, 2026,** between the hours of **12:00 P.M. and 3:00 P.M.** under reasonable terms of supervision set forth in 8 U.S.C. § 1231(a)(3). Counsel for Petitioner (or their designee/agent) will be permitted to wait in the Federal Justice Tower lobby during the release window. Determining reasonable terms of supervision shall not in any way impede Petitioner's immediate release.

**IT IS FURTHER ORDERED** that the parties must file a **JOINT** Status Report by **October 24, 2026**, to certify compliance with the Court's order, including the date and time of Petitioner's release.

**IT IS FURTHER ORDERED** that Respondents are prohibited from re-detaining Petitioner in the future absent proof of changed circumstances making his removal reasonably foreseeable.

**IT IS FURTHER ORDERED** that Respondents are prohibited from removing Petitioner to a third country without providing Petitioner with adequate notice of intent to seek removal to a third country and due process in the form of an opportunity to seek to reopen Petitioner's immigration court proceedings to seek fear-based relief from removal.

**IT IS FURTHER ORDERED** that Counsel for Respondents is directed to immediately provide notice of this Order to the parties they represent.

///

///

The Clerk of Court is kindly directed to enter judgment in favor of Petitioner.

**DATED** this __21__ day of October, 2026.

Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT